IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARTHA D. WILLIAMS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:11-cv-843 -TFM |
| | ) | [wo] |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On September 17, 2008, Martha Williams ("Plaintiff" or "Williams") protectively filed a Title II application for a period of disability insurance benefits (DIB) alleging disability began on August 18, 2009. (Tr. 55). Williams also protectively filed an XVI application for supplemental security income (SSI). (Tr.56). Williams' application was denied at lower levels of determination. Williams timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on December 23, 2009. (Tr. 18). The Appeals Council denied Williams' request for review, which made the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). (Tr. 1). Pursuant to 28 U.S.C. § 636 (c), the parties have consented to entry of final judgment by the United States Magistrate Judge. Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

## I. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.

1986)).  The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence."  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  There is no presumption that the Commissioner's conclusions of law are valid.  *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

## II.  STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1]  *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

---

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

>(1) Is the person presently unemployed?
>
>(2) Is the person's impairment(s) severe?
>
>(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]
>
>(4) Is the person unable to perform his or her former occupation?
>
>(5) Is the person unable to perform any other work within the economy?
>
>An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### III. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff was 47 years old on August 18, 2008, the date she alleges she became disabled and 48 years old on the date of the ALJ's decision. (Tr. 107). Williams has an 8th grade education (Tr. 133) and past work experience as a short order cook, poultry boner, and cleaner. (Tr. 51, 129, 136). In her function report, Williams states that she gets up in the morning and cooks breakfast for herself and the friend she lives with, she washes dishes, does housework, cooks dinner, and watches her grandchildren until their mother returns from work. (Tr. 144). She also cares for a "big dog". (Tr. 145). Plaintiff reports she prepares two big meals everyday, does laundry, and irons. (Tr. 146). Weekly she shops for groceries. (Tr. 147). Her hobbies include fishing, family outings, and playing games and spending time with family and friends. (Tr. 148).

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

At the hearing before the ALJ, Williams testified that she could not stand or sit for very long because of back pain and leg numbness, that she had difficulty sleeping because of pain, and that she spent the day sitting around and watching television. (Tr. 45). She testified that she usually took a nap in the afternoon because she felt tired during the day due to her poor sleep at night. (Tr. 47). On a scale of one to ten, with ten being the worst possible pain imaginable, Williams rates her pain as an eight or nine on an average day. (Tr. 48). Plaintiff also testified that she was receiving mental health treatment and that medication had helped. (Tr. 49).

At the hearing the ALJ asked Eric Anderson, a vocational expert, ("VE") to assume a hypothetical individual of Plaintiff's age, education, and work experience who could perform sedentary work that did not require using the lower extremities for pushing or pulling and that was low-stress requiring only occasional decision making, judgment, and changes in the work setting and did not involve interaction with the general public. (Tr. 51-52). The VE testified that such an individual could not perform any of Plaintiff's past relevant work, but could perform the sedentary jobs of lens inserter, surveillance system monitor and assembler. (Tr. 52).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 18, 2008, her alleged onset date. (Tr. 23). At step two, the ALJ determined that Plaintiff's major depressive disorder, dysthymic disorder, alcohol dependence in sustained full remission, degenerative disc disease, sciatica, degenerative joint disease of the knees and ankles, and osteoarthritis were "severe" impairments. (Tr. 23). At step three, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled an impairment listed at 20 C.F.R. pt. 404 subpt. P, app. 1. (Tr. 23-26). The ALJ found Plaintiff had the residual functional capacity for sedentary work with no use of her lower extremities for pushing and pulling in a low stress environment with only occasional decision making, judgment, and changes with the work setting and only occasional interaction with the public. (Tr. 26). The ALJ concluded based on vocational expert testimony, that although Plaintiff could not perform any of her past relevant work, she was capable of performing jobs that existed in significant numbers in the national economy and was therefore not disabled. (Tr. 30-31).

## IV. MEDICAL HISTORY

Plaintiff received emergency room treatment in August and September 2008, for complaints of pain radiating from her low back into her right leg. Although she had positive straight leg raising tests each time, she also had no swelling or abnormalities, normal extremities, full range of motion, normal sensation, and normal strength. Conservative care consisting of rest, pain medications, such as Acetaminophen/Hydrocodone and mesthylprednisolone, and using a heating pad was recommended. (Tr. 182-86, 189-90). A lumbar MRI performed on September 24, 2008, showed degenerative disc disease with disc bulge at L4-5 and mild spinal stenosis. (Tr. 192).

On November 19, 2008, Ericka Morris, a State agency single-decision-maker, reviewed Plaintiff's record and opined that Plaintiff retains the ability to perform light

work[5] with occasional climbing stairs and ramps, stooping, and crouching; no climbing ladders, ropes, and scaffolds; frequent balancing, kneeling, and crawling; and avoidance of concentrated exposure to hazards. (Tr. 194-201).

In February, 2009, William Gammill, D.O. examined Plaintiff for complaints of low back pain. Williams said her pain was of "moderate intensity". (Tr. 205). On examination Plaintiff had mild tenderness to palpation in her lower spine. She had normal range of joint motion and no swelling or deformities. Dr. Gammill assessed acute and chronic low back pain, acute lumbar myofascial strain, acute muscular spasm, and acute sciatica. He prescribed pain medications and discharged Plaintiff in stable and improved condition. (Tr. 206).

Williams presented as a new patient to Jennifer S. Marsden, M.D., of the Slocomb Family Health Care clinic on April 27, 2009. On examination Plaintiff was 64.5 inches tall and weighed 261 pounds (Tr. 209). Dr. Marsden assessed herniated disc, prescribed pain medications and recommended exercises. (Tr. 209). When Williams returned to the clinic for a PAP test on May 27, 2009, with nurse practitioner Kelli McAllister and Robert L Gilliam, M.D., she said that her activities included walking and fishing and she exercised frequently. (Tr. 213). In an undated form, Dr. Gilliam answered three questions by circling the most appropriate answer. As to the first question, he indicated Plaintiff's pain was present to such an extent to be "distracting to adequate performance

---

[5] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted maybe very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *See* 20 C.F.R. § 404.1567(b).

of daily activities or work." (Tr. 219). As to the second question, he indicated that physical activity would greatly increase her pain to such a degree "as to cause distraction from tasks or total abandonment of task." *Id.* As to the third question, he indicated that drug side effects could "be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc." *Id.*

Treatment notes from McAllister dated July 30, 2009 state that Plaintiff had some hip joint tenderness, but no hip abnormalities and normal range of hip motion. Plaintiff had normal gait and station. McAllister advised Plaintiff to continue her current medications, follow-up as needed, and consult with an orthopedic specialist. (Tr. 216).

In October 2009, Plaintiff began mental health treatment at Spectracare. Plaintiff received a diagnosis of major depression, dysthymic disorder, and alcohol dependence in sustained full remission. (Tr. 226). During a group therapy session on October 19, 2009, Plaintiff was friendly with a normal affect. Plaintiff stated that she was feeling "pretty good". (Tr. 225). On November 16, 2009, Plaintiff was friendly with a normal affect and reported she was doing fine and feeling better on medication. Plaintiff was sleeping through the night and attending church. (Tr. 222).

## V. ISSUES

Williams raises two issues for judicial review:

(1) Whether the Commissioner's decision should be reversed because the ALJ failed to properly apply the three-part pain standard established by the Eleventh Circuit for adjudicating complaints of pain? (*See* Doc. 12 at 3).

(2) Whether the Commissioner's decision should be reversed because there is no RFC assessment from any physician in the record? (*See* Doc. 12 at 4).

## VI. DISCUSSION

**The ALJ Properly applied Regulations and Case Law in Adjudicating Plaintiff's Subjective Complaints of Debilitating Pain.**

Williams argues that the ALJ erred in making a determination of her credibility because he failed to properly apply the three-part pain standard. The Social Security Regulations provide that a claimant's subjective complaints of pain, alone, cannot establish disability. Rather the Regulations describe additional objective evidence that is necessary to permit a finding of disability. *See* 42 U.S.C.§ 423(d)(5)(A); 20 C.F.R. § 404.1529. Interpreting these regulations, the Eleventh Circuit has articulated a "pain standard" that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. This standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain. *Foote v. Chater,* 67 F. 3d1553, 1560 (11th Cir. 1995); *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991). More specifically, Williams argues that the November 19, 2008 Physical RFC completed by Ericka Morris, a single decision-maker (Tr. 199) and the undated Clinical Assessment of Pain Form completed by Dr. Gilliam (Tr. 219), support Williams' allegations that she satisfies the pain standard.

First, with respect to the Physical RFC, Williams recognizes that Morris limited her to a less than light exertional level, but points to the narrative part of the report where Morris states "[c]laimant alleged problems with sciatica and pinched nerve . . . claimant's statements about her symptoms and the functional limitations are partial[ly] credible as the severity alleged is consistent with the objective medical findings." (Tr. 199). However, this statement was made in the context of finding Williams was able to perform work at the less than light exertional level, which is a higher exertional level than the ALJ ultimately concluded Williams could perform. Moreover, Morris found Williams' complaints of pain "partial[ly] credible" which leaves some room for interpretation as to which complaints were not fully credible. Thus, the court is not persuaded that this piece of evidence alone or in combination with the Pain Form, discussed below, satisfies the pain standard as Williams argues.

Second, with respect to the Pain Form, the court notes that this undated, "circle-the-best-answer" form was completed by Dr. Gilliam who first saw Williams in May, 2009, less that three months before Williams' alleged onset date of disability. Indeed, "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (4th Cir. 1993). "[W]here these so-called 'reports are unaccompanied by thorough written reports, their reliability is suspect....'" *Id*. (citing *Brewster v. Heckler*, 786 F.2d 581, 585 (3r Cir. 1986); *O'Leary v. Schweiker*, 710 F.2d 1334, 1341 (8th Cir. 1983)).

In *Hinders v. Barnhart,* however, the district court distinguished the *O'Leary* case on the basis that in *O'Leary* the doctor completing the check the box form had only seen

Plaintiff twice for consultative examinations which were two years apart. 349 F.Supp.2d 1218, 1226 n.3 (S.D. Iowa 2004). To the contrary in *Hinders,* the "form was completed by a treating physician who had a long relationship with Plaintiff" and was a "questionnaire" which was "much more detailed than an RFC check list" and the treating physician's opinion was "consistent with the other medical and vocational evidence in the record." *Id.* Here, as in *O'Leary* , Williams did not have a long standing relationship with Dr. Gilliam, nor did the completed Pain Form provide specific information personal to Williams and to her allegations of disabling pain. Rather, Dr. Gilliam's conclusory opinions stated in the Pain Form were inconsistent with other record evidence, as discussed below.

The ALJ retains discretion not to credit the claimant's testimony of pain and other symptoms. *See Holt,* 921 F. 2d at 1223. When the ALJ decides not to fully credit the claimant's testimony, the ALJ must articulate the reasons for that decision. *Id.* In other words, even where the medical record includes objective evidence of pain, and where the ALJ acknowledges that the claimant experiences some pain, the ALJ may conclude that the degree of pain is not disabling in light of all the evidence. *See Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987). Indeed, it is not inconsistent for the ALJ to find a claimant suffers pain, and yet is not so severely impaired as to meet the stringent test for disability imposed by the Act. *See Arnold v. Heckler,* 732 F. 2d 881, 884 (11th Cir. 1984).

In her decision, the ALJ found that Plaintiff's subjective complaints were not consistent with her activities of daily living, objective medical evidence, and other evidence in the record and she fully explained her rationale. (Tr. 26-29). Indeed the ALJ

noted that Plaintiff prepares meals, does housework and laundry, grocery shops, went fishing and participated in family outings, attends church every week, and cares for her grandchildren everyday. (Tr. 144-47). In short, Williams' non-work activities do not support her claims of debilitating pain. *See Dyer v Barnhart,* 395 F.3d 1206, 1212 (11th Cir. 2005.) (consideration of claimant's daily activities, symptom frequency, and medication types and dosages were sufficient reasons for finding plaintiff not credible.) Accordingly, the court concludes that Williams self-reported activities of daily living support the ALJ's decision to discredit her complaints regarding the intensity, persistence, and limiting effects of that pain.

In her decision, the ALJ also found that the medical evidence contradicts Plaintiff's subjective complaints of disabling back pain. Specifically, the ALJ considered and discussed Williams' back and leg pain, noting that it was a result of sciatica, but that objective medical findings in her records did not support her claim of a long-term, permanent, or disabling condition. (Tr. 27). For example, Plaintiff's examinations showed only mild tenderness and that she had normal gait and station, full range of motion, normal extremities, no swelling, normal sensation, and full muscle strength. (Tr. 182-83, 190, 206, 216). *See* SSR 96-7P, 1996 WL 374186, at *6-7 (stating an ALJ may consider the objective medical evidence in evaluating credibility.) The evidence before the ALJ reveals Williams sought treatment from the emergency room three times and at a doctor's office only twice and the only course of treatment provided was medication and exercise (Tr. 177-93, 203-17). Ergo, it was reasonable for the ALJ to find Plaintiff's subjective complaints of disabling pain lacked credibility. (Tr. 28). *Jones v. Bowen,* 810

F.2d 1001, 1004 (11th Cir. 1986). (affirming Commissioner's credibility determination given absence of treatment and pain medications for alleged symptoms.)  Accordingly, the court concludes that because of the ALJ's reasons, which were supported by record evidence, Williams' argument that the ALJ did not properly articulate and apply the Eleventh Circuit's pain standard must fail.  *See Wilson v. Barnhart,,* 284 F. 3d 1219, 1227-28 (11th Cir. 2002). (upholding ALJ's credibility evaluation which discounted plaintiff's "subjective assertions of pain.")

.       **The ALJ's Residual Functional Capacity Assessment was Reasonable.**

A residual functional capacity assessment is used to determine the claimants' capacity to do as much as they are possibly able to do despite their limitations.  *See* 20 C.F.R. § 404.1545(a)(1) (2010).  An RFC assessment will be made based on all relevant evidence in the case record.  *Id.*; *Lewis v. Callahan*, 125 F.3d at1440.  The Commissioner's decision is due to be affirmed "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel,* 185 F. 3d 1211, 1213 (11th Cir. 1999).  "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart,* 405 F. 3d 1208, 1211 (11th Cir. 2005).

Williams argues that the ALJ erred by not making a residual functional capacity determination which was supported by a treating or examining physician's opinion. Although Williams does not cite *Coleman v. Barnhart,* 264 F. Supp.2d 1007, 1010 (S.D. Ala. 2003), the court is aware of this opinion and that it supports her argument.. However, this court has previously addressed the question of whether it is reversible error

for an ALJ to make an RFC assessment which is not supported by an assessment from a physician.  *See Daniels v. Astrue*, 2012 WL 353756 (M.D. Ala. 2012).

In *Daniels,* this court distinguished *Coleman* on the basis of its facts and because the *Coleman* court gave no citation to any source of law requiring a physician's assessment for the purposes of making an RFC determination.  *Id.* *4.  Also, this court explained that it was persuaded by the reasoning of Judge Foy Guin in *Langley v. Astrue,* where the court held that reversal is not required because there is no RFC from a physician in the record.  777 F .Supp.2d 1250, 1257-60 (N.D. Ala. 2011).  Indeed, *Langley* disagreed with the *Coleman* reasoning finding that it "attempt[s] to place the burden of proving the claimant's RFC on the Commissioner at step five" and this shifting of the burden is "inconsistent with the Commissioner's regulations, Supreme Court precedent and unpublished decisions in this Circuit."  *Daniels, supra*, at * 5 citing *Id.* at 1260.  (Citations omitted).  Accordingly the Court concludes that the ALJ did not err in finding Plaintiff's RFC without the benefit of a physician's assessment in the record.

By implication, Williams can also be heard to argue that the ALJ erred by not ordering a consultative examination for the purpose of establishing an RFC.  At an ALJ hearing, "the [ALJ] is responsible for assessing [the claimant's] residual functional capacity."  20 C.F.R. § 404.1546(c) (2010).  The claimant is "responsible for providing the evidence [the ALJ] will use to make a finding about [the claimant's] residual functional capacity."  20 C.F.R. § 404.1545(a)(3) (2010).  The ALJ is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the

claimant] get medical reports from [their] own medical sources. *Id.; Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988). (The ALJ is not required to order a consultative examination unless the record establishes it is necessary to render a fair decision). The Commissioner's duty to develop the record includes ordering a consultative examination if one is needed to make an informed decision. *Reeves v. Heckler,* 734 F.2d 519, 522 n. 1 (11th Cir. 1984). However, where no physician recommends an additional consultation and the record is sufficiently developed for the ALJ to make a determination, the failure to order an additional consultative examination is not error. *Good v. Astrue,* 240 Fed. Appx. 399,*3 (11th Cir. 2007) citing *Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999).

The court finds there is no evidence in the record that any physician recommended Williams undergo a consultative exam. The court also finds that the ALJ carefully considered the entire record, including all the medical evidence, which he summarized in detail, (Tr. 26-29 ) in finding Williams had the RFC to perform less than a full range of sedentary work. (Tr. 26). Accordingly, the court concludes that based upon a review of the record as a whole, the ALJ's RFC finding is supported by substantial evidence. *Moore,* 405 F.3d at 1211.

### VII. Conclusion

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that

the decision of the Commissioner is **AFFIRMED.** A separate judgment is entered herewith.

DONE this 22nd day of May , 2012.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE